168 F.3d 638
 Bruce FARKAS, as personal representative of the Estate of
Ruth Farkas, Plaintiff-Appellee Cross-Appellant,
Ruth Farkas, Plaintiff-Counter-Defendant,
v.
Arlene FARKAS, Defendant-Counter-Claimant-Appellant Cross-Appellee.
 No. 436, Dockets 98-7141(L), 98-7171(XAP).
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 16, 1998.
Decided Feb. 23, 1999.
 
 1
 David Jaroslawicz, Jaroslawicz & Jaros, New York, N.Y., for Appellant.
 
 
 2
 Joseph Leshen, Philip Alba, P.C., West Islip, N.Y., for Appellee.
 
 
 3
 Before: CABRANES and POOLER, Circuit Judges, and TRAGER, District Judge.*
 
 TRAGER, District Judge:
 
 4
 Plaintiff Ruth Farkas ("Ruth") originally brought this claim against defendant Arlene Farkas ("Arlene"), Ruth's estranged daughter-in-law, for conversion of a number of pieces of art which had resided for many years in the home of Arlene and Bruce, Ruth's son. Arlene then counterclaimed against Ruth for fraud and conversion of art, money, and other marital assets. Prior to trial, Ruth died. Following a jury verdict in which the jury found that Arlene had converted nothing, and that Ruth had converted art and other property worth $700,000, Bruce, as Ruth's representative, moved to set aside the verdict against her on the grounds that the suit had been brought after the expiration of the applicable statute of limitations and, in the alternative, that there was insufficient evidence as a matter of law to support the verdict.
 
 
 5
 The United States District Court for the Southern District of New York (Harold Baer, Jr., Judge ) held that Arlene's counterclaims were barred by the applicable New York statute of limitations and, accordingly, vacated that part of the jury's verdict which found Ruth liable for $700,000 worth of damages. See Farkas v. Farkas, No. 95 Civ. 8464, 1998 WL 3633 (S.D.N.Y. Jan.7, 1998). Arlene appeals from this decision. The district court also denied Ruth's motion for judgment as a matter of law or for a new trial on her conversion claims against Arlene. See Farkas v. Farkas, No. 95 Civ. 8464, 1998 WL 3595 (S.D.N.Y. Jan 7, 1998). Bruce, as Ruth's representative, cross-appeals from these decisions, and, in addition, seeks an affirmance on the alternate ground that Arlene's claims were insufficiently proven as a matter of law.
 
 Background
 
 6
 (1)
 
 
 7
 Arlene Farkas was married to Bruce Farkas, the son of Ruth Farkas, in 1959. Sometime in 1990, after having lived together for thirty years, Bruce left Arlene. He had, by that time, entered into a bigamous marriage with Dolores D'Oca, with whom Bruce had had children, and to whom Bruce and his mother had given support for some period of time.
 
 
 8
 In 1992, Arlene commenced a divorce action against Bruce in New York Supreme Court. Bruce counterclaimed for divorce. In 1994, Ruth Farkas requested of Arlene that certain pieces of art be delivered to her from the home Arlene and Bruce had shared, and in which Arlene still lived. Ruth's position was that these works of art had been on loan to Bruce and Arlene, and Ruth now wanted them back. Arlene refused to give them up. Ruth then brought this action for conversion against Arlene in the Southern District of New York on the basis of diversity jurisdiction. Arlene responded that the works in question had been gifts from Ruth to the married couple over the course of their marriage; some of the artwork had been in the house for thirty years. Arlene also raised counterclaims against Ruth for fraud and conversion of marital assets, i.e., jewelry, artwork, and monies.
 
 
 9
 (2)
 
 
 10
 While Ruth's claim was a simple allegation of conversion of a number of pieces of art, Arlene's counterclaims for conversion and fraud were more complex. Arlene alleged in her first counterclaim that Ruth had entered into a "scheme" with Bruce to secrete Bruce's money in off-shore trusts and bank accounts; that Ruth had attempted to defraud Arlene by contriving to loan Bruce money which actually belonged to him; and, further, that Ruth had "funneled" marital assets to Bruce's second wife, Dolores D'Oca. Answer and Countercl. at pp 19, 20, 31, 35. The district court dismissed this claim of fraud as pleaded with insufficient particularity under Fed.R.Civ.P. 9.[1] In her second counterclaim, Arlene re-alleged her previous claims, and further alleged that Ruth had "caused to be removed" a Dali painting, a Hassam painting, "and other valuable paintings and art" from the couple's apartment. Id. at p 34. In addition to the art listed in Arlene's counterclaim, her pre-trial order included claims for a Rodin sculpture, a home-equity loan, and a jeweled pin.
 
 
 11
 At trial, Arlene sought to establish Ruth's involvement in the following scheme: Ruth had given various pieces of art to the couple over the years; Bruce engineered the removal of the art from the marital home; Ruth and Bruce then arranged for the art to be sold and for the proceeds to go to Ruth, who in turn then lent the money to Bruce. Evidence to prove that Ruth and Bruce engaged in this scheme included a direct correlation between the amounts of money received from the sale of individual pieces of art and the amounts of money Ruth "lent" to Bruce. In addition, there were indications, and the jury presumably believed, that the documents produced by Ruth and Bruce to evidence the alleged loans of money and art had been created in anticipation of litigation. Moreover, at approximately the same time as a note for the alleged loans totaling $300,000 was executed, Ruth made a large gift of money for Bruce's benefit (over two million dollars) from her own resources. Finally, there were direct conflicts between Ruth's and Bruce's accounts of events.[2]
 
 
 12
 The jury found that Ruth had participated in the conversion of the artworks by Dali, Hassam, and Rodin that she had previously given her son and daughter-in-law, as well as $400,000 from the home-equity loan. The jury did not find that Ruth had converted the disputed jeweled pin, and except for finding that the money from the home-equity loan had been converted in 1990, the jury, although requested to determine on what date the art had been converted, was unable to do so. Finally, the jury found that Arlene had not converted five pieces of art which Ruth had accused her of converting.
 
 
 13
 After the jury's verdict, as had been previously agreed to by the district court and the parties, the question whether or not the claims had been brought within the three year statute of limitations for conversion was put before the district court. The district court was also apparently left with the question whether or not equitable estoppel would bar Ruth's affirmative defense (to Arlene's counterclaims) of the statute of limitations.[3] In the end, the district court determined that Arlene had not presented sufficient evidence to sustain equitable estoppel as a bar to the statute of limitations, that the conversions had occurred, at the latest, in 1990, and that thus, the counterclaims, brought in 1995, were barred by the three year statute of limitations. Because of these findings of fact and legal conclusions, the district court did not find it necessary to discuss that portion of Ruth's motion which sought the setting aside of the jury's verdict as a matter of law (Fed.R.Civ.P. 50) on the ground that there was insufficient evidence on which to base a recovery.
 
 
 14
 (3)
 
 
 15
 Both parties have appealed on various grounds. Because we find that the district court misapprehended the standard for equitable estoppel under New York law, we remand the issue of estoppel back to the district court for further consideration under the correct standard. In so doing, while we find it unnecessary to address all of the numerous issues raised by Ruth and Arlene, we do discuss briefly Ruth's motion for judgment as a matter of law regarding the home-equity loan and two of the district court's evidentiary rulings.
 
 Discussion
 
 16
 (1)
 
 
 17
 The district court set out a standard for asserting equitable estoppel more restrictive than the actual test under New York law. Because we find that there was more than ample evidence that Arlene could have met the proper standard had it been applied, we reverse the district court's vacatur of the jury verdict and remand for further proceedings employing the appropriate legal standard.
 
 
 18
 When addressing the equitable estoppel issue, the district court held:
 
 
 19
 Defendant has not alleged, nor produced evidence in support of the contention, that she was fraudulently precluded from filing suit. All defendant alleges is that "[t]hese facts did not come out until pre-trial testimony was given in the matrimonial case, which was less than three years from the date the counterclaims were issued." This allegation goes to the discovery of the relevant facts, not to any affirmative cover-ups by plaintiff. Defendant has failed to meet her burden and equitable estoppel is inappropriate here.
 
 
 20
 Farkas, 1998 WL 3633, at * 2 (citations omitted). The district court derived its standard for estopping a statute of limitations defense from two cases: General Stencils, Inc. v. Chiappa, 18 N.Y.2d 125, 127-128, 272 N.Y.S.2d 337, 339, 219 N.E.2d 169 (1966), and Smith v. Cutson, 188 A.D.2d 1034, 591 N.Y.S.2d 674, 675 (4th Dept.1992). See Farkas, 1998 WL 3633, at * 2. We do not agree that either case would forestall an estoppel in this case. If anything, the cases support Arlene's position.
 
 
 21
 In the Chiappa case, an employer brought a suit against his head bookkeeper alleging that the bookkeeper had stolen over $30,000 out of petty cash over approximately a nine-year period and had used his position to conceal his theft. The defendant in that case raised the statute of limitations for conversion as a defense, claiming that it barred a remedy for those conversions which had occurred more than three years before. The New York Court of Appeals ordered a new trial, holding that based on the defendant's concealment of the theft, equitable estoppel could bar defendant from relying on the statute of limitations for conversion as a defense. The Court wrote that where it was the defendant's "affirmative wrongdoing--a carefully concealed crime here--which produced the long delay between the accrual of the cause of action and the institution of the legal proceeding," courts "had the power ... to bar the assertion of the affirmative defense of the Statute of Limitations." Chiappa, 18 N.Y.2d at 128, 272 N.Y.S.2d at 340, 219 N.E.2d 169.
 
 
 22
 In the Cutson case, the administratrix of decedent's estate was barred by the statute of limitations from bringing a medical malpractice suit. The court held that plaintiff could not invoke estoppel because she had discovered the identity of the defendant before the expiration of the statute of limitations, and because the record "contain[ed] no evidence of fraud, misrepresentations, deception, or intentional concealment." Cutson, 188 A.D.2d at 1034, 591 N.Y.S.2d at 675 (emphasis added). As the district court correctly noted, Cutson states that equitable estoppel applies "where plaintiff was induced by fraud, misrepresentation or deception to refrain from filing a timely action." Id. (citation omitted). However, the Cutson court found that equitable estoppel did not apply in the case before it because there was "no evidence of fraud, misrepresentation, deception, or intentional concealment on defendant's part." Id. The Cutson court appears to have understood the standard for equitable estoppel to include intentional concealment, while the district court in the present case focused only on Cutson's first, more restrictive standard. Cutson and Chiappa, therefore, both seem to say that participation in the concealment of a conversion, if "intentional" (Cutson ) or even "careful" (Chiappa ), can be a sufficient basis for estoppel.
 
 
 23
 As in Chiappa, and in contrast to the facts of Cutson, Arlene in this case alleged and offered proof that Ruth intentionally engaged in, at a minimum, a scheme to convert and conceal the monies derived from the sale of artwork. See infra. Thus, contrary to the district court's conclusion, which seemed to indicate that the standard for equitable estoppel requires active thwarting of a plaintiff's attempts to file a claim, Arlene's proof met the Cutson as well as the Chiappa standard.
 
 
 24
 (2)
 
 
 25
 In this case, there is more than ample evidence to support a claim of equitable estoppel under the standard discussed above. There is little question that all of the artwork in question belonged to Bruce and Arlene and that, at some point, Ruth received the money from the sale of the artwork. Some of the pieces had hung in the couple's apartment for thirty years. Arlene testified that they were gifts, and, in light of the circumstantial evidence, the jury could, and did, justifiably believe her and reject Ruth's claim that the paintings were loans. First, the surreptitious means by which the art was sold and the monies from the sale were loaned to Bruce, see infra, indicates that Ruth and Bruce believed that the art belonged to the couple. Second, Ruth and Bruce gave contradictory versions of the critical events. All of this seems to support Arlene's account.
 
 
 26
 As to the means by which Arlene was deprived of her share in the artwork, Arlene alleged that Bruce took art which belonged to the couple from the apartment. The art was then sold and the money went to Ruth who would then "loan" the money back to Bruce. This strategy constituted both inequitable conduct and concealment: inequitable conduct in that art belonging to Bruce and Arlene was converted into money which Arlene never saw; concealment in that the process was designed to have Arlene think that the money had been used by Bruce for business or joint-personal expenses. Furthermore, if the matter had come to light during divorce proceedings, Arlene would have been prevented from making a claim against the money because Bruce didn't actually "own" the money--the money belonged to Ruth.
 
 
 27
 The single most significant factor evidencing Ruth's role in the concealment is the method used to funnel the proceeds from the sale of the artwork to Bruce. Bruce received from his mother in "loans" the same amount of money that he would have had had he simply taken the pieces of art, sold them himself, and kept the money. The fact that he did not do just that indicates the subterfuge in which Bruce engaged and Ruth assisted. Bruce testified that after the Rodin sculpture was sold, he asked to borrow the money received from its sale and his mother agreed. Bruce also testified that "within a month or two" of the date that the Hassam painting was sold for $250,000, he asked for and received that same amount from his mother. Tr. at 96. There were also two Dali paintings sold, one of which came from the apartment. While, according to Bruce, that Dali painting sold for $90,000, Arlene testified that Bruce told her it was sold for $300,000 in 1990. Tending to confirm Arlene's account, there is a note, presented at trial and signed by Bruce, which states that Bruce owed Ruth $300,000 "as of" August 13, 1991.[4] Tr. at 189. It is difficult to see what purpose this note served other than to defraud Arlene when, at about the same time that the note was executed, Ruth made a gift to Bruce of approximately $2,000,000 using the proceeds of the sale of the other Dali painting. In light of this extremely generous gift, the extent of Bruce's indebtedness of a few hundred thousand dollars could not have been of any real concern to Ruth other than that its memorialization would help her son to usurp the benefit of the sale of the artwork. With that in mind, we should note that, in every case, Ruth could have, as ostensible owner of the artwork, directed that checks from the sale of the artwork be made out to Bruce.
 
 
 28
 However, the charade of loans had three positive results for Bruce, none of them legitimate. First, it hid the fact that Bruce was not using the money received from the sale of the art for business purposes or for the couple's expenses. Second, in the event of a divorce proceeding, there would be fewer marital assets to divide. Finally, it made it difficult for Arlene to discover the fraud at a later date. If Arlene had known of the loan charade or that the money was not being used for the purposes Bruce stated to her, either fact would have put Arlene on notice that Bruce had taken joint assets and she would then have been in a position to take steps to protect her interest in the artwork.
 
 
 29
 Ruth's conscious aim and role in all this, to conceal that Bruce received these monies, is further reflected in the difficulty Bruce and Ruth had in telling consistent stories. There is no evidence that Arlene knew what had happened to the money from the paintings, other than Arlene's testimony that she thought the money from the Dali and Hassam paintings would go for the couple's expenses. Bruce, of course, implied that this could not have been true. Bruce testified that the money from the Hassam painting went to Ruth. He also testified that he never got the money from the sale of either of the two Dali paintings. Ruth, however, testified to the contrary. Ruth testified she gave Bruce a Hassam painting "to live on." Tr. at 108-09. Ruth also testified that the money from the sale of one Dali painting, about $2,000,000, was given to a lawyer to disburse to Bruce. Thus, there was no consistent account on the part of Bruce and Ruth as to what happened to the monies from the sale of the various pieces of art. Indeed, it is the inconsistency in Ruth and Bruce's testimony with regard to the Dali paintings that is most telling about Ruth's role in this scheme because it returns us to the questionable nature of the loans.
 
 
 30
 The note documenting the $300,000 loan, however, was not the only dubious document presented at trial. There was also the letter, presented on Ruth's behalf, drafted in 1987 at the same time that Arlene had just discovered her husband's bigamy (though Bruce did not leave the house until 1990). The letter purported to establish that Ruth had loaned, rather than conveyed as gifts, a number of pieces of art to Bruce and Arlene, and served as a basis to Ruth's original federal suit. (The list of art accompanying the letter largely conformed to the art which Arlene was accused of converting.) Despite Ruth and Bruce's testimony, other than that single letter, there was not one document indicating that any of the art which accumulated in the couple's house over a period of more than thirty years was on loan.[5] In fact, in referring to that letter, Ruth indicated that it was the only such document extant. In the face of such a paucity of evidence, it seems clear that the jury justifiably found that Ruth's claims that the art was on loan were demonstrably false.
 
 
 31
 The jury also specifically found that Arlene had not converted the pieces of art that Ruth had accused Arlene of converting. In so doing, the jury had to decide, according to the district court's charge, that the art had been conveyed as a gift to either Bruce or Arlene despite testimony by Ruth that the art was loaned, and despite the letter, requested by Ruth, drafted by Ruth's secretary, and signed by Bruce, reciting that the art in question was on loan. The totality and internal contradictions of Bruce and Ruth's testimony, the documents presented to support their stories, and the unlikeliness of any reasonable reconciliation of these elements, together provide evidence sufficient to establish that Ruth knew she was helping to conceal the conversion of marital property.
 
 
 32
 Thus, it is clear that there is more than sufficient evidence to conclude that Ruth "intentionally" or "carefully" assisted in and concealed the conversion of the artwork. We therefore vacate the district court's ruling on the availability of equitable estoppel and remand the issue for further consideration under the standard set forth above.[6]
 
 
 33
 (3)
 
 
 34
 In light of our decision above, it is necessary for us to address a number of other issues raised by Ruth: the viability of the jury's verdict on the home-equity loan, and the exclusion of two pieces of evidence presented on Ruth's behalf. Ruth's other claims, including her motion for judgment as a matter of law with respect to Arlene's counterclaims for conversion of artwork, are without merit and do not warrant discussion.
 
 
 35
 (i) The home-equity loan
 
 
 36
 As the equitable estoppel discussion indicates, there was more than ample evidence in the record to support the jury's findings against Ruth with regard to her participation in the conversion of the various pieces of art. However, Bruce, as Ruth's representative, has also appealed the jury's finding that Ruth converted the proceeds of a home-equity loan on the ground that Arlene did not provide any proof that any of the monies from that loan ever passed through Ruth's hands. Because the district court found the claims to be barred by the statute of limitations, it never reached this question.
 
 
 37
 This court has previously held that "judgment as a matter of law is appropriate when there is 'such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture.' " Logan v. Bennington College Corp., 72 F.3d 1017, 1022 (2d Cir.1996) quoting Concerned Area Residents for Env't v. Southview Farm, 34 F.3d 114, 117 (2d Cir.1994). The jury's verdict in relation to the home-equity loan may be vulnerable under that standard. The evidence regarding the loan essentially consisted of testimony by Arlene that it was her belief that the "money eventually wound its way" to Dolores D'Oca to help pay for an apartment. Tr. at 144. D'Oca gave faint corroboration with testimony that she received approximately the same amount of money from Ruth as the dollar amount of the home-equity loan taken out on Bruce and Arlene's apartment. In light of our decision on the statute of limitations issue, it now may be necessary to rule on Ruth's insufficiency of evidence claim. However, because the district court has the benefit of complete familiarity with the case, we think it appropriate for the district court to initially rule on this issue.
 
 
 38
 (ii) Excluded evidence
 
 
 39
 Ruth's representative has appealed two evidentiary rulings by the district court. The first pertains to the exclusion of a black binder relating to Ruth's art holdings. We find no error in this ruling.
 
 
 40
 When, at trial, Ruth's counsel attempted to admit the binder into evidence, he described the binder as probative of only the fact that Ruth owned a large art collection and kept records of that collection, and that is exactly what and all it is. Arlene's counsel stipulated to both of these facts, and, furthermore, the letter admitted by the court at that time to indicate Ruth's ownership included a schedule of most of the disputed artwork. Indeed, that admitted letter is the only proof of ownership which Ruth identified in her deposition. See supra. Later, during its deliberations, the jury asked to see the binder. On appeal, Ruth's counsel does not claim that the binder contained anything other than a list of artwork owned at some point by Ruth. Having reviewed photo-copies of the binder, it is clear that the binder, the contents of which had no indicia of the dates of purchase of the various pieces of art, sale of the same, or loans of the same, would not have been helpful to the jury in reaching its decision. In light of the fact that there was no dispute that Ruth had, at one time, owned the disputed works of art, it seems apparent that the binder had no probative value other than to prove a fact not in dispute. Therefore, its exclusion was not error.
 
 
 41
 Ruth's representative also appeals the exclusion of checks apparently drawn on the home-equity account. These were offered by Ruth as evidence that money from that account was distributed to people other than herself. They were excluded by the district court because they were not on Ruth's list of exhibits. The ruling clearly was in the discretion of the district court, but we leave it to the district court whether to revisit this ruling during its consideration of Ruth's post-trial motions or during any new trial should there be one.
 
 Conclusion
 
 42
 We vacate, for further proceedings consistent with this opinion, the district court's judgment insofar as it denied Arlene's claim of equitable estoppel. The judgment dismissing plaintiff's conversion claim is affirmed as are the district court's evidentiary rulings.
 
 
 43
 No costs.
 
 
 
 *
 The Honorable David G. Trager, United States District Judge for the Eastern District of New York, sitting by designation
 
 
 [1]
 Inexplicably, no request for leave to re-plead was ever made after the granting of the motion to dismiss the fraud claim
 
 
 [2]
 Because Ruth had passed away prior to trial in the present action, Ruth's counsel presented her account to the jury by reading portions of the transcript of her testimony in Bruce and Arlene's divorce action
 
 
 [3]
 There appears to have been some confusion between the parties and the district court over exactly what issue was left for the district court to decide. The transcript indicates that the matter was consistently, and almost exclusively, referred to as the question of the statute of limitations which involved, at that stage, primarily the issue of accrual, i.e., at what point the conversion occurred and the cause of action accrued. See Tr. at 249-55. The parties and court agreed that this was a difficult question of law best left to the court after the jury entered its verdict. As the judge noted in his later decision, however, equitable estoppel involves questions of fact, not just law, which he decided nevertheless. See Farkas, 1998 WL 3633, at * 2 (citing Will of Spewack, 203 A.D.2d 133, 610 N.Y.S.2d 243, 244 (1st Dept.1994))
 
 
 [4]
 The note itself was inexplicably excluded from evidence on grounds of relevance. Nevertheless, both Ruth and Mr. Herbert Paul, the attorney whose office prepared the note for Ruth, testified about it. Paul also testified as to the note's authenticity
 
 
 [5]
 Ruth's representative now contends that a black binder, which apparently served as an inventory of Ruth's art holdings, excluded at trial, would have provided more proof of her ownership of the disputed artwork. We do not find this binder to have been at all probative of the issues in dispute. See infra
 
 
 [6]
 Our ruling on the equitable estoppel issue applies not only to the counterclaims for conversion of artwork, but also to the counterclaim for conversion of the proceeds of the home-equity loan. The district court found that claim to be barred by the statute of limitations as well. Accordingly, we remand to the district court the question of equitable estoppel of the statute of limitations for conversion of the home-equity loan. Of course, the question might be mooted by a finding that there was insufficient evidence as a matter of law to support the jury's verdict on the home-equity loan. See infra