*Su v. Yeh*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of July, two thousand twenty-five.

PRESENT:    STEVEN J. MENASHI,
            MYRNA PÉREZ,
            ALISON J. NATHAN,
                 *Circuit Judges.*

_____

WEI SU, HAI JUAN WANG,

　　　　　*Plaintiffs-Cross-Defendants-Appellants*,

　　　v.                                                    No. 24-0653

YEH YEO HWANG,

　　　　　*Defendant-Cross-Claimant-Appellee*.[*]

_____

---

[*] The Clerk of Court is directed to amend the caption as set forth above.

*For Plaintiffs-Cross-Defendants-Appellants*:   XUEJIE WONG, Law Offices of Xuejie Wong PLLC, New York, NY.

*For Defendant-Cross-Claimant-Appellee*:   ELIZABETH L. MO (Hin Ton Wong and Hugh H. Mo, *on the brief*), Law Firm of Hugh H. Mo, P.C., New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Caproni, J.).

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

This case involves a dispute over the ownership of an ancient Chinese ritual wine vessel, the Zhou Zha Hu (the "vessel"), from the Middle Western Zhou dynasty of the tenth to ninth century B.C. Appellants Wei Su and his agent Hai Juan Wang (collectively "Su") and Appellee Yeh Yeo Hwang ("Yeh") have both asserted ownership claims to the vessel. Following a seven-day bench trial, the district court decided that Su converted Yeh's fifty-percent ownership interest in the vessel and was equitably estopped from asserting a statute of limitations defense.

On appeal, Su challenges the conclusions of the district court that (1) Su's knowing purchase and possession of the vessel constituted conversion under New York law, and (2) his participation in an "elaborate scheme" of concealment justified equitable estoppel. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

**I**

In 2002, Yeh purchased the vessel for $600,000 from the son of a prominent art collector. In 2005, Yeh attempted to use the vessel to secure a loan from Zhang Shenbao ("Zhang") to fund the construction of a music center in China. Zhang agreed to loan Yeh $200,000 at an interest rate of eighty percent, and the vessel was

2

consigned for auction to the Chongyuan Art Auction Company ("Chongyuan"). After an unsuccessful auction in January 2006, Yeh attempted to recover the vessel, but Chongyuan presented an agreement purportedly signed by Yeh stating that the vessel must be returned to Zhang if the auction failed. Yeh claimed that his signature was forged. Litigation ensued in the Shanghai courts. In May 2007, the Shanghai Higher People's Court held that Yeh and Zhang were co-owners of the vessel, each with a fifty-percent interest, and that Zhang had the right to possess the vessel.

In September 2007, Zhang sold his interest in the vessel to Su for approximately $660,000 without Yeh's knowledge or consent. Su admitted at trial that he was not a bona fide purchaser and knew of Yeh's interest when he purchased the vessel from Zhang. Between 2007 and 2018, Yeh made numerous attempts to contact Zhang and Chongyuan about the vessel but received no response.

On two separate occasions, Su attempted to sell full ownership of the vessel without acknowledgement of Yeh's interest—first at Chongyuan in 2011 and later at Sotheby's in 2014. When Yeh discovered the Sotheby's listing, he promptly asserted his ownership claim, causing Sotheby's to withdraw the vessel from auction. Sotheby's made multiple attempts throughout 2014 and 2015 to facilitate communication between Yeh and Su, but Su refused to grant Sotheby's permission to share his contact information with Yeh.

In 2015, Su filed a quiet title action in China without naming Yeh as a party or disclosing to the court the prior Shanghai judgment establishing Yeh's co-ownership of the vessel. In 2017, Su sued Sotheby's in the United States District Court for the Southern District of New York for return of the vessel, again without naming Yeh as a party. Sotheby's then filed an interpleader action against both Su and Yeh so that their conflicting ownership claims could be adjudicated. Yeh asserted a conversion crossclaim against Su—and that is the claim at issue in this appeal.

## II

Prior to trial, Su filed motions for judgment on the pleadings and for summary judgment, each time seeking to defeat Yeh's conversion claim. The district court denied both motions. *See Su v. Sotheby's, Inc.*, No. 17-CV-4577, 2019 WL 4917609, at \*5 (S.D.N.Y. Oct. 4, 2019); *Su v. Sotheby's, Inc.*, 490 F. Supp. 3d 725, 730 (S.D.N.Y. 2020). After a seven-day bench trial, the district court determined that Su had converted Yeh's fifty-percent interest in 2007 and was equitably estopped from asserting a statute of limitations defense due to his participation in an "elaborate scheme to conceal" the conversion. *Su v. Sotheby's, Inc.*, No. 17-CV-4577, 2024 WL 477029, at \*4 (S.D.N.Y. Feb. 7, 2024) (internal quotation marks omitted); *see also Su v. Sotheby's, Inc.*, No. 17-CV-4577, 2022 WL 14118016, at \*10 (S.D.N.Y. Oct. 24, 2022). The district court ordered the vessel sold at fair market value with net proceeds divided equally between Su and Yeh. While this appeal was pending, the parties agreed to sell the vessel at auction at Sotheby's in September 2024 for $5.4 million, with the proceeds held in escrow pending resolution of this litigation.

In this appeal, Su challenges the district court's (1) denial of his motion for judgment on the pleadings; (2) denial of his motion for summary judgment; and (3) post-trial judgment regarding conversion and equitable estoppel. Su argues that his purchase and possession of the vessel did not constitute conversion, and he further argues that participation in an "elaborate scheme to conceal" does not justify equitable estoppel under New York law.

## III

"After a bench trial, this Court reviews a district court's factual findings for clear error and its legal conclusions de novo." *Giordano v. Thomson*, 564 F.3d 163, 168 (2d Cir. 2009). When a district court determines that equitable estoppel is appropriate, "we review the legal premises for that conclusion *de novo*, the factual bases for clear error, and the ultimate decision for abuse of discretion." *DeSuze v. Ammon*, 990 F.3d 264, 268 (2d Cir. 2021).

4

## A

We first address Su's challenge to the district court's denial of his pre-trial motions for judgment on the pleadings and for summary judgment. Because the issues raised in those motions were fully tried during the bench trial, we decline to review the district court's pre-trial rulings.

Generally, an appeal from a final judgment of the district court permits review of all rulings that led to the judgment. *Dupree v. Younger*, 598 U.S. 729, 734 (2023). However, "once the case proceeds to trial, the full record developed in court supersedes the record existing at the time of the [pre-trial] motion." *Id.* (alteration omitted) (quoting *Ortiz v. Jordan*, 562 U.S. 180, 184 (2011)). At that point, the district court's earlier "assessment of the facts based on the [pre-trial] record becomes ancient history and is not subject to appeal." *Id.* (internal quotation marks and alteration omitted). Instead, "[f]act-dependent rulings must be appraised in light of the complete trial record." *Id.*

In this case, the denial of each of Su's pre-trial motions was expressly based on outstanding factual disputes concerning Yeh's equitable estoppel argument that were subsequently resolved at trial. *See Su*, 490 F. Supp. 3d at 730 (denying Su's summary judgment motion because "clear questions of fact" existed about "whether Su is equitably estopped from asserting a statute of limitations defense"); *Su*, 2019 WL 4917609, at *5 (denying Su's motion for judgment on the pleadings because there were "factual questions raised in the pleadings … relevant to assessing Su's statute-of-limitations defense and any claim by Yeh to equitable estoppel"). For that reason, our review properly focuses on the district court's post-trial findings and conclusions rather than the preliminary assessments in its pre-trial rulings. *See Ortiz*, 562 U.S. at 184 ("Once trial has been had, … the availability of [an affirmative defense] should be determined by the trial record, not the pleadings nor the summary judgment record.") (internal quotation marks and alteration omitted).

5

**B**

We therefore turn to the post-trial rulings. Su first argues that the district court erred in concluding that he converted Yeh's ownership interest in the vessel. We disagree.

Conversion under New York law occurs "when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession." *Colavito v. N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49-50 (2006). "Two key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." *V&A Collection, LLC v. Guzzini Props. Ltd.*, 46 F.4th 127, 133 (2d Cir. 2022) (quoting *Colavito*, 8 N.Y.3d at 50).

Su contends that he could not have converted the vessel because Yeh lacked a possessory right and mere possession by a co-owner does not constitute conversion. The district court correctly rejected these arguments. While the Shanghai judgment recognized that Zhang had an exclusive right of possession pending the Chongyuan auction, the right was specifically limited to that purpose. Nothing in the record suggests that "Zhang's right of possession would persist if the Chongyuan auction were unsuccessful or if Zhang were to abandon his attempts to auction the Vessel." *Su*, 2024 WL 477029, at *2. Zhang's limited possessory right expired in 2007 when he ceased trying to sell the vessel at the Chongyuan auction and instead sold it to Su without Yeh's knowledge or consent. By that point, Yeh's full right of co-ownership—including his right of possession—was restored.

Su contends that mere possession by a co-owner does not constitute conversion, but the district court correctly recognized that Su's actions went beyond ordinary co-ownership. By his own admission, Su was not a bona fide purchaser: he knew of Yeh's fifty-percent ownership interest when he acquired the vessel from Zhang, yet he proceeded to treat the vessel as his exclusive property.

6

While New York law generally shields co-owners from conversion claims based on mere possession of jointly owned property, this protection dissolves when "that possession develops … into such a hostile appropriation of it as excludes the possibility of beneficial enjoyment by [the other co-owner], or ends in a sale of the whole property which ignores and denies any other right." *Osborn v. Schenck*, 83 N.Y. 201, 204 (1880); *see also Gates v. Bowers*, 169 N.Y. 14, 17 (1901) (noting that co-owners may maintain an action for conversion against each other when "the possession of the co-owner results in … such a hostile appropriation of it as to exclude, destroy or ignore the interest of the other tenant therein"). Su's actions—repeatedly attempting to sell the entire vessel without acknowledgment of Yeh's interest, refusing to communicate with Yeh, and excluding him from ownership proceedings—constituted a "hostile appropriation" that went beyond mere possession and amounted to conversion under New York law.

## C

Su next argues that the district court erred in holding that he was equitably estopped from asserting a statute of limitations defense to Yeh's conversion claim. We again disagree.

Under New York law, conversion claims must be brought within three years of the date of conversion. N.Y. C.P.L.R. § 214(3). However, a defendant may be equitably estopped from asserting a statute of limitations defense "when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action." *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007) (quoting *Doe v. Holy See (State of Vatican City)*, 17 A.D.3d 793, 794 (3d Dep't 2005)); *see also Putter v. N. Shore Univ. Hosp.*, 7 N.Y.3d 548, 552 (2006) ("[E]quitable estoppel will preclude a defendant from using the statute of limitations as a defense where it is the defendant's affirmative wrongdoing which produced the long delay between the accrual of the cause of action and the institution of the legal proceeding.") (internal quotation marks and alteration omitted).

For equitable estoppel to apply, plaintiffs must establish that "subsequent and specific actions by defendants somehow kept them from timely bringing suit." *Zumpano v. Quinn*, 6 N.Y.3d 666, 674 (2006). "[P]articipation in the concealment of a conversion, if 'intentional' or even 'careful,' can be a sufficient basis for estoppel." *Farkas v. Farkas*, 168 F.3d 638, 642 (2d Cir. 1999) (citations omitted). In addition, a plaintiff must demonstrate that he exercised "[d]ue diligence … in bringing an action," *Holy See*, 17 A.D.3d at 796 (internal quotation marks omitted and alteration omitted), by "showing that the action was brought within a reasonable period of time after the facts giving rise to the … equitable estoppel claim 'have ceased to be operational,'" *Abbas*, 480 F.3d at 642 (quoting *Holy See*, 17 A.D.3d at 796).

In this case, the district court determined that equitable estoppel was appropriate based on Su's participation in an "elaborate scheme" of concealment from 2007 through 2019. *Su*, 2022 WL 14118016, at *10. Su challenges this ruling on three grounds. First, he argues that mere concealment is insufficient to establish equitable estoppel in the absence of a fiduciary or confidential relationship. Second, he argues that even if concealment is sufficient, the record does not show concealment during the limitations period from 2007 to 2010. Third, he argues that Yeh failed to meet the due diligence requirement. We address each argument in turn.

**1**

First, Su contends that concealment is not sufficient to establish equitable estoppel without a fiduciary or confidential relationship between the parties. This argument misunderstands New York law. While it is true that "[g]enerally, mere silence or failure to disclose the wrongdoing is insufficient" absent "a fiduciary relationship which gave the defendant an obligation to inform the plaintiff of facts underlying the claim," *Holy See*, 17 A.D.3d at 795 (internal quotation marks and alterations omitted), affirmative acts of concealment provide an independent basis for estoppel regardless of the relationship. Courts applying New York law have

8

held that a defendant may be equitably estopped from asserting a statute of limitations defense when he engaged in a concealment scheme designed to prevent discovery of the wrongdoing. *See, e.g.*, *Farkas*, 168 F.3d at 642 (holding that intentional concealment of a conversion "can be a sufficient basis for estoppel" under New York law); *Gen. Stencils, Inc. v. Chiappa*, 18 N.Y.2d 125, 128 (1966) (holding that courts may "bar the assertion of the affirmative defense of the Statute of Limitations where it is the defendant's affirmative wrongdoing—a carefully concealed crime here—which produced the long delay between the accrual of the cause of action and the institution of the legal proceeding").

The cases on which Su relies involved mere nondisclosure without affirmative acts of concealment. *See Zumpano*, 6 N.Y.3d at 674 (finding equitable estoppel inapplicable because the plaintiffs failed to "establish that subsequent and specific actions by defendants somehow kept them from timely bringing suit"); *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 789 (2012) (rejecting an equitable estoppel argument because the plaintiffs' allegations "consisted of nothing but defendants' failure to disclose the wrongs they had committed"); *Ross v. Louise Wise Servs., Inc.*, 8 N.Y.3d 478, 492-93 (2007) (rejecting a claim of equitable estoppel because "nothing in the record indicates that the [defendant] attempted after the [alleged wrongdoing] to conceal [information] to induce plaintiffs to forbear from filing suit"). In this case, by contrast, the district court found that Su and his associates engaged in deliberate acts of concealment beyond the initial conversion in 2007 that were specifically designed to prevent Yeh from discovering and pursuing his claim.

**2**

Second, Su argues that even if active concealment can support estoppel, the record lacks evidence of concealment during the 2007 to 2010 limitations period. Su's argument is belied by the district court's undisputed factual findings. The district court found—and Su does not contest—that Yeh "made numerous attempts to get in touch with Chongyuan from 2007 to 2014 and with Zhang from

2007 to 2018, but neither party responded to his outreach." *Su*, 2022 WL 14118016, at *15; *see also id.* at *17 (noting Yeh's "persistent efforts" to contact Chongyuan and Zhang about the vessel).

While the failure to respond to inquiries might not always qualify as active concealment, Chongyuan's conduct toward Yeh between 2007 and 2010 reflected more than simple nondisclosure. Yeh had previously communicated with Chongyuan about his ownership of the vessel. In 2005, Yeh engaged in "extensive negotiations with Chongyuan about the consignment of the Vessel for auction, including meeting and corresponding with Ji Chong Jian, a bronzeware expert who held a senior position at Chongyuan, and with Wu Ji, Chongyuan's lawyer." *Id.* at *1 (footnote omitted). Ji Chong Jian "assisted [Yeh] in researching the Vessel's history," and as part of the consignment process, Yeh "gave him power of attorney" and, in turn, "Chongyuan, through Ji Chong Jian, gave him a written warranty that it would return the Vessel to him if the auction failed." *Id.* at *10. When the auction failed in January 2006, Yeh asked Ji Chong Jian to return the vessel. Chongyuan responded to Yeh by presenting an agreement—purportedly signed by Zhang and Yeh—stating that the vessel must return to Zhang after a failed auction. *Id.* at *11. "Given the dispute" over ownership, "Chongyuan refused to return the Vessel to either Yeh or Zhang"—just as Sotheby's would later react to an ownership dispute—and instead participated in the Shanghai litigation that determined the ownership of the vessel. *Id.* at *2. That litigation yielded a judgment that Yeh was a fifty-percent co-owner. *Id.* at *11.

After 2007, when Yeh continued to inquire about the status of the vessel, he was making the same standard inquiries of an owner to the auction house that had custody of his property. He had every reason to expect Chongyuan to take his inquiries seriously. That is the standard business practice of an auction house. When Yeh later made such an inquiry of Sotheby's, Sotheby's immediately informed the consignor, withdrew the vessel from auction, and sought to facilitate communication between the parties. *Id.* at *3-4, 16.

And Chongyuan had in fact been following these practices in its communications with Yeh. Chongyuan worked closely with Yeh as the owner in the consignment process. When Yeh asserted his ownership right in 2006, Chongyuan responded formally with documentation to indicate that there was a dispute over who was entitled to custody of the vessel—and it then participated in an adjudication of the dispute. *Id.* at *11. But once Yeh's ownership was conclusively determined, Chongyuan altered its practices in order to prevent Yeh from discovering the disposition of the vessel. That was not a passive nondisclosure: Chongyuan's conduct following its cooperation with Yeh and its participation in the Shanghai litigation was a "subterfuge" that was "designed to have [Yeh] think" that the auction house was interested in honoring the proper ownership and possessory rights in the vessel when in fact it was scheming with Zhang and Su to sell it. *Farkas*, 168 F.3d at 643. The district court did not err in concluding that this course of conduct amounted to the "intentional concealment" from Yeh of the status of the vessel. *Id.* at 642.

The district court found—and its finding was neither clearly erroneous nor is even challenged in this appeal—that Su participated in Chongyuan's concealment during this period. The district court concluded that "Yeh has proved by a preponderance of the evidence that a concealment scheme existed and was active from 2007 to 2018." *Su*, 2022 WL 14118016, at *10. Moreover, "Yeh has proved that, despite knowing about Yeh's fifty-percent interest in the Vessel, those involved in the scheme colluded to convert the Vessel and to attempt to sell the Vessel, first at Chongyuan and then at Sotheby's, and the members of the scheme actively concealed their actions from Yeh, preventing him from filing his conversion claim in a timely manner." *Id.* As our court has previously explained, "participation in the concealment of a conversion, if 'intentional' or even 'careful,' can be a sufficient basis for estoppel." *Farkas*, 168 F.3d at 642 (citations omitted).

We recognize that the district court described several acts of concealment that occurred after 2010. Its consideration of those acts was necessary to establish both the existence of a coordinated concealment scheme and the length of the

concealment. But the district court specifically found, with respect to the 2007 to 2010 period, that "Zhang and Chongyuan's repeated decisions to ignore Yeh, for years on end, constitute multiple *acts of concealment*." *Su*, 2022 WL 14118016, at *15 (emphasis added). That finding was not clearly erroneous because—given the baseline expectations that Chongyuan had established with Yeh—Chongyuan was not passively failing to inform Yeh of further developments but was intentionally closing off a channel of information on which Yeh reasonably relied and on which Chongyuan had led him to rely.

**3**

Third, Su argues that Yeh failed to exercise due diligence in pursuing his claim. We again disagree. The district court found that Yeh acted with due diligence because he filed his conversion crossclaim within a reasonable time after learning Su's identity. The district court determined that the conditions giving rise to the estoppel ended on November 9, 2018, when Yeh received a Taiwanese newspaper containing the notice that the district court had ordered Sotheby's to publish. *Id.* at *18. Once Yeh received that notice—which included the names of the parties to the interpleader action—he "had sufficient information about Su and Wang's identities that he was no longer prevented from filing his conversion claim." *Id.*

Yeh filed his conversion crossclaim six months later, on May 24, 2019. We agree with the district court that this timing satisfied the due diligence requirement because six months "is well within the three-year statute of limitations period" and constitutes "a reasonable period for Yeh's attorneys to have investigated and filed a claim." *Id.*

In sum, we see no error in the district court's determination that Su was equitably estopped from asserting a statute of limitations defense to Yeh's conversion claim.

\*     \*     \*

We have considered Su's remaining arguments, which we conclude are without merit. For the foregoing reasons, we affirm the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court