■ JOHN DOE, Appellant, v HOLY SEE (STATE OF VATICAN CITY), et al., Respondents. (And Three Other Related Actions.) [793 NYS2d 565]—

Mercure, J.P. Appeal from an order of the Supreme Court (Hester, Jr., J.), entered October 15, 2003 in Broome County, which, inter alia, granted certain defendants' motions to dismiss the complaints.

The complaints in these four consolidated actions assert several causes of action against defendants Diocese of Syracuse and individual churches (hereinafter collectively referred to as defendants) and defendant Holy See, arising from the alleged sexual abuse of plaintiffs by priests who were assigned to defendant churches. The abuse allegedly occurred between 35 and

more than 50 years ago, when plaintiffs were all children. The most recent claim of abuse allegedly occurred in approximately 1970. Plaintiffs assert causes of action against defendants and the Holy See sounding in breach of fiduciary duty, fraud, negligent retention and supervision and negligent failure to warn or instruct. In lieu of answering the complaints, defendants moved to dismiss the complaints as barred by the applicable statutes of limitations. Supreme Court granted the motions and dismissed the complaints in their entirety.[1] Plaintiffs appeal, and we now affirm.

The youngest plaintiff in these actions was born in March 1957. Consequently, the latest infancy toll expired in 1975, and the last statute of limitations therefore expired in 1978 (see CPLR 208), more than 20 years before plaintiffs commenced the instant actions in late 2002 and early 2003. Plaintiffs assert, however, that the statutes of limitations should be tolled pursuant to the doctrine of equitable estoppel because they contend that after the abuse occurred, defendants actively attempted to conceal the priests' sexual misconduct and avoid civil liability by transferring the priests from one parish to another. Alternatively, plaintiffs seek a toll of the statutes of limitations on the basis of "religious duress."

As the expiration of the last statute of limitations is without dispute, defendants are prima facie entitled to judgment dismissing the complaints pursuant to CPLR 3211 (a) (5) (see *Assad v City of New York*, 238 AD2d 456 [1997], *lv dismissed* 91 NY2d 848 [1997]). Thus, the burden now rests upon plaintiffs to present evidentiary facts establishing their entitlement to a toll (*id.* at 457; *see 860 Fifth Ave. Corp. v Superstructures— Engrs. & Architects*, 15 AD3d 213, 213-214 [2005]; *Alicanti v Bianco*, 2 AD3d 373, 374 [2003], *lv denied* 3 NY3d 602 [2004]; *Zoe G. v Frederick F.G.*, 208 AD2d 675, 675-676 [1994]; *Doe v Roe*, 192 AD2d 1089, 1090 [1993]; *compare Leon v Martinez*, 84 NY2d 83, 87-88 [1994] [articulating the standard for considering a motion to dismiss for failure to state a cause of action]).

Equitable estoppel may be invoked to defeat a statute of limitations defense when the " 'plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action' " (*Matter of Eberhard v Elmira City School Dist.*, 6 AD3d

---

1. The complaints were dismissed against the Holy See on jurisdictional and statute of limitations grounds even absent a motion from that defendant. Supreme Court dismissed as moot plaintiffs' cross motions for permission to conduct limited discovery relative to the Holy See and, on appeal, plaintiffs assert no substantive argument specifically addressed to the dismissal of the complaints against the Holy See.

971, 972 [2004], quoting *Simcuski v Saeli*, 44 NY2d 442, 448-449 [1978]). Generally, "mere silence or failure to disclose the wrongdoing is insufficient" (*Zoe G. v Frederick F.G., supra* at 675-676; *see Smith v Smith*, 830 F2d 11, 12-13 [2d Cir 1987]) to support an estoppel, but concealment without actual misrepresentation may form the basis for invocation of the doctrine if "there was a fiduciary relationship which gave [the] defendant an obligation to inform [the] plaintiff of facts underlying the claim" (*Jordan v Ford Motor Co.*, 73 AD2d 422, 424 [1980]; *see General Stencils v Chiappa*, 18 NY2d 125, 128 [1966]; *Hetelekides v Ford Motor Co.*, 299 AD2d 868, 868 [2002]; Weinstein-Korn-Miller, NY Civ Prac ¶ 201.13 [6]).

In general, "[a] fiduciary relationship may exist where one party reposes confidence in another and reasonably relies on the other's superior expertise or knowledge" (*WIT Holding Corp. v Klein*, 282 AD2d 527, 529 [2001]; *see Chimento Co. v Banco Popular de Puerto Rico*, 208 AD2d 385, 386 [1994]; *Penato v George*, 52 AD2d 939, 942 [1976], *appeals dismissed* 42 NY2d 908 [1977]). Where, as here, a parishioner plaintiff seeks to establish the existence of a fiduciary relationship with an institutional church defendant, the plaintiff may not merely rely on the church's status in general, but must come forward with facts demonstrating that his or her relationship with the institution was somehow unique or distinct from the institution's relationship with other parishioners generally (*see Doe v Norwich R.C. Diocesan Corp.*, 268 F Supp 2d 139, 149-150 [2003]; *Doe v Holy See [State of Vatican City]*, 6 AD3d 1228, 1229 [2004]; *see e.g. Martinelli v Bridgeport R.C. Diocesan Corp.*, 196 F3d 409, 429-430 [2d Cir 1999]).[2]

In opposition to defendants' motions to dismiss upon the affirmative defense, it was incumbent upon plaintiffs to come forward with facts in support of equitable estoppel (*see Assad v City of New York, supra* at 457). Plaintiffs have relied solely upon the factual allegations in their complaints which, in our view, do not demonstrate that a fiduciary relationship ever existed between themselves and defendants. In their boilerplate complaints, plaintiffs allege only that defendants provided pastoral services to plaintiffs and their immediate families and that defendants held themselves out as religious educational

---

**2.** It must be noted that in these actions, it is coincidental that the complaints assert causes of action for breach of fiduciary duty, and plaintiffs also rely on a fiduciary relationship in support of an equitable toll of the statute of limitations. Here, we consider only whether plaintiffs' invocation of equity is supported by a showing of a fiduciary relationship; we state no view on whether the causes of action could withstand a motion to dismiss for failure to state a cause of action.

institutions and maintained instructional programs for children, in which three of the four plaintiffs participated. The record is wholly devoid of any indication that plaintiffs' relationships with defendants were unique or distinct from defendants' relationships with other parishioners. Even in action No. 4, in which it is alleged that plaintiff's mother approached the church to complain about the priest's inappropriate behavior, no evidence is offered that would support recognition of a fiduciary relationship between defendants and that plaintiff. Inasmuch as plaintiffs have failed to demonstrate the existence of fiduciary relationships between themselves and defendants, defendants are not equitably estopped from asserting the statute of limitations defense.

Moreover, even assuming that a fiduciary relationship existed at or about the time of the alleged abuse, plaintiffs have not established that they commenced these actions in a reasonably timely fashion. "[D]ue diligence on the part of the plaintiff in bringing [an] action is an essential element for the applicability of the doctrine of equitable estoppel . . . [and] the burden is on the plaintiff to establish that the action was brought within a reasonable time after the facts giving rise to the estoppel have ceased to be operational" (*Simcuski v Saeli*, 44 NY2d 442, 450 [1978], *supra*; *see Zoe G. v Frederick F.G.*, 208 AD2d 675 [1994], *supra*; *see also Davis v Smith Corp.*, 262 AD2d 752, 754 [1999]; *cf. Mars v Diocese of Rochester*, 196 Misc 2d 349, 352 [2003], *affd* 6 AD3d 1120 [2004], *lv denied* 3 NY3d 608 [2004]). Plaintiffs have not articulated any acts by defendants that prevented them from timely commencing suit, and thus, they have failed to meet their burden of showing that they were wrongfully induced by defendants not to commence suit (*see Golden v Scalise*, 87 AD2d 959, 960 [1982], *lv denied* 57 NY2d 604 [1982]). Further, even if we assume that defendants engaged in continued acts to conceal their failure to protect plaintiffs from the priests, plaintiffs have failed to state the time at which defendants' alleged concealment ended. Having failed to set forth the acts of defendants that would support an estoppel and the time at which those acts ceased to be operational, and not asserting that these actions were commenced within a reasonable time thereafter, plaintiffs have failed to establish that the equitable toll of estoppel should be applied.

Finally, we reject plaintiffs' assertion that the statutes of limitations may be tolled pursuant to a doctrine of "religious duress," which they characterize as rooted in the beliefs of the Roman Catholic Church and in the nature of a fear of excommunication or eternal damnation resulting from the pursuit of

a civil action against church officials. Plaintiffs fail to demonstrate that any duress they may have experienced continued after they attained majority or broke all ties with the church (*see generally Zoe G. v Frederick F.G., supra* at 675). More importantly, our recognition of a doctrine of religious duress, based solely on the tenets and teachings of a particular church rather than any legal concept, would require us " 'to venture into forbidden ecclesiastical terrain' " (*Doe v Holy See [State of Vatican City]*, 6 AD3d 1228, 1229 [2004], *supra*, quoting *Langford v Roman Catholic Diocese of Brooklyn*, 271 AD2d 494, 495 [2000]).

In sum, the complaints were properly dismissed. We note that it is not within our power to extend the limitations period prescribed by statute (*see* CPLR 201). To the extent that plaintiffs seek a special period of limitations because their claims involve the sexual assault of minors (*see e.g.* Conn Gen Stat § 52-577d), their remedy lies with the Legislature, not with the courts. We have considered plaintiffs' remaining arguments and conclude that they are without merit.

Mugglin, Rose and Lahtinen, JJ., concur.

Peters, J. (concurring in part and dissenting in part). When addressing a preanswer motion to dismiss, we must liberally construe the pleadings, "accept the facts . . . alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (*Leon v Martinez*, 84 NY2d 83, 87-88 [1994]; *see* CPLR 3026; *Arnav Indus. Retirement Trust v Brown, Raysman, Millstein, Felder & Steiner*, 96 NY2d 300, 303 [2001]). In my view, the majority did not adhere to these time-honored strictures when it concluded that plaintiffs failed to show a fiduciary relationship.

A fiduciary relationship has been described as follows: "one founded upon trust or confidence reposed by one person in the integrity and fidelity of another. It is said that the relationship exists in all cases in which influence has been acquired and abused, in which confidence has been reposed and betrayed. The rule embraces both technical fiduciary relations and those informal relations which exist whenever one man trusts in, and relies upon, another. Such a relationship might be found to exist, in appropriate circumstances, between close friends or even where confidence is based upon prior business dealings" (*Penato v George*, 52 AD2d 939, 942 [1976], *appeals dismissed* 42 NY2d 908 [1977] [citations omitted]). While I agree with the majority that a fiduciary relationship cannot be grounded solely upon a parishioner's attendance at weekly mass at a local church governed by an umbrella religious organization (*see Doe v*

*Norwich R.C. Diocesan Corp.*, 268 F Supp 2d 139, 149 [2003]), I find that plaintiffs in action Nos. 1, 2 and 4 have sustained their burden of demonstrating that their relationship with defendants Diocese of Syracuse and the individual churches (hereinafter collectively referred to as defendants) was unique from that shared by other parishioners generally (*compare Martinelli v Bridgeport R.C. Diocesan Corp.*, 196 F3d 409, 429-430 [2d Cir 1999], *with Doe v Norwich R.C. Diocesan Corp.*, *supra* at 149-150). In each of those actions, plaintiffs received religious instruction from a church-sponsored school where they were taught by either nuns or priests from such churches. Each was singled out for individualized instruction or specialized attention and each of their families allowed them to participate in the church-sponsored or extracurricular activities. As the preanswer motion before us is addressed solely to "a skeletal record" (*Simcuski v Saeli*, 44 NY2d 442, 451 [1978]) due to the procedural posture of these actions, I find, upon assessing the intent of the allegations in these complaints, that plaintiffs in action Nos. 1, 2 and 4 have demonstrated the existence of a relationship different from that of the other parishioners.

Further, with the exception of action No. 4,* I believe that the doctrine of equitable estoppel would have tolled the applicable limitations period. A toll can be found if it is shown that defendants, subject to a fiduciary relationship, concealed critical facts which prevented plaintiffs from commencing an action within the applicable period (*see generally Jordan v Ford Motor Co.*, 73 AD2d 422, 424 [1980]). Contrary to the majority's view, I find that plaintiffs in action Nos. 1 and 2 squarely contended that they did not learn of defendants' practice of fraudulently concealing the priests' predatory behaviors until approximately 2002 when such practice became the subject of public media reports (*compare Smith v Smith*, 830 F2d 11, 13 [2d Cir 1987]). Accepting these facts as true, as we must on this motion to dismiss, the duty to have made further inquiry and ascertain all relevant facts would not have arisen until that time (*see Thoma v Town of Schodack*, 6 AD3d 957, 959 [2004]; *Contento v Cortland Mem. Hosp.*, 237 AD2d 725, 726 [1997], *lv denied* 90 NY2d 802 [1997]). Moreover, since New York recognizes the viability of a cause of action for negligent hiring, negligent retention and negligent supervision (*see Sharon B. v Reverend S.*, 244 AD2d 878 [1997]; *Kenneth R. v Roman Catholic Diocese of Brooklyn*, 229 AD2d 159 [1997], *cert denied* 522 US 967 [1997],

---

* In action No. 4, plaintiff's mother became aware of the abuse and initiated a report to defendants which led to the priest's removal. Plaintiff and his family later discovered such priest as an assistant pastor at their new church.

*lv dismissed* 91 NY2d 848 [1997]; *Jones v Trane,* 153 Misc 2d 822 [1992]), and does not require that such causes of action "be pleaded with specificity" (*Kenneth R. v Roman Catholic Diocese of Brooklyn, supra* at 162), I would not have dismissed these causes of action in action Nos. 1 and 2. While I recognize that the continued viability of these actions, and the claims alleged therein, are dependent upon facts obtained after a full opportunity for discovery (*cf. Paul J.H. v Lum,* 291 AD2d 894 [2002]), I cannot condone their dismissal in this preanswer stage of litigation.

For all of these reasons, I would modify the order of Supreme Court by reversing the order dismissing action Nos. 1 and 2 and reinstate them.

Ordered that the order is affirmed, without costs.