Mohamed ABBAS, Plaintiff–Appellant,

v.

Lt. DIXON, Donald Selsky,
Defendants–Appellees,

Supt. John Kelly, Supt. Victor Herbert,
Sgt. Simons, W. Gee, Officer Poland,
Officer P. Koepp, Dept. Gnway, Dept.
Conway, D. Matyas, K. Derkovitz, Wy-
oming County, Gerald L. Stout, Allen
Capwell, D. Supkis, Defendants,

Eliot Spitzer, Attorney General
of the State of New York,
Amicus Curiae.

Docket No. 04–6219–pr.

United States Court of Appeals,
Second Circuit.

Argued: Jan. 19, 2007.

Decided: Feb. 28, 2007.

Erin G. Holt, Wilmer Cutler Pickering Hale & Dorr, LLP (Christopher J. Meade, David A. O'Neil, on the brief), New York, NY, for appellant.

Andrea Oser, Assistant Solicitor General (Martin A. Hotvet, Assistant Solicitor General, of counsel; Eliot Spitzer, Attorney General of the State of New York, on the brief), Albany, NY, for amicus curiae.

Before: LEVAL and STRAUB, Circuit Judges, and UNDERHILL, District Judge.*

* Stefan R. Underhill of the United States District Court for the District of Connecticut, sitting by designation.

UNDERHILL, District Judge.

Plaintiff–Appellant Mohamed Abbas appeals an order entered *sua sponte* by the United States District Court for the Western District of New York (David G. Larimer, *then Chief Judge* ), dismissing most of his complaint as untimely. Specifically, the District Court held that the three-year statute of limitations for claims made pursuant to 42 U.S.C. § 1983 had elapsed before Abbas filed his complaint. For the reasons set forth below, we affirm.

## I.   Factual and Procedural Background

Abbas is a prisoner who was formerly housed at the Attica Correctional Facility in Attica, New York. Abbas has alleged that, on four separate occasions, prison officials, and inmates under the prison officials' control, physically assaulted him. The alleged assaults occurred in February 1999, May 1999 and July 1999. Abbas also alleges that, after the attacks, prison officials deprived him of necessary medical treatment. Abbas claims that he sought help from the Wyoming County District Attorney's Office and Sheriff's Office, but that they failed to assist him.

In his complaint, Abbas alleges that, on February 24, 1999, the same day as the first attack, prison officials fabricated several disciplinary charges against him. After a hearing on March 13, 1999, Lieutenant Dixon found Abbas guilty of the trumped-up charges and sentenced Abbas to 180 days in keeplock. Abbas appealed

Dixon's decision to Donald Selsky, but Selsky denied Abbas's appeal in May or June 1999. On August 16, 1999, Abbas filed a petition in New York state court pursuant to C.P.L.R. Article 78 in which he challenged the disciplinary proceedings. On February 7, 2000, while the Article 78 petition was still pending, Dixon reconsidered his previous disciplinary ruling and, without conducting a hearing or receiving new evidence, administratively reversed that ruling. On March 29, 2000, in light of Dixon's administrative reversal of the disciplinary ruling, the state court dismissed Abbas's Article 78 petition as moot.

Sometime between October 17, 2002 and November 15, 2002, Abbas filed a complaint[1] pursuant to 42 U.S.C. § 1983 against various officials associated with the Attica Correctional Facility, the Wyoming County District Attorney's Office, and the Wyoming County Sheriff's Office. On November 27, 2002, before the defendants had been served with process, the District Court, acting *sua sponte*, dismissed as untimely Abbas's claims against all defendants except for Dixon and Selsky. Abbas's claims against Dixon and Selsky then proceeded in district court. Dixon and Selsky subsequently moved to dismiss Abbas's complaint as untimely. The District Court initially denied their motion without prejudice to renewal. Dixon and Selsky subsequently renewed their motion, however, and the District Court ultimately granted the motion.[2] Abbas's appeal from the final judgment was initially dismissed

---

**1.** The docket sheet indicates that Abbas filed his complaint on November 15, 2002. We have held, however, that for statute of limitations purposes, a *pro se* prisoner's complaint is deemed filed on the date that the prisoner "turn[s] his complaint over to prison officials" for transmittal to the court, not when the court actually receives it. *Dory v. Ryan,* 999 F.2d 679, 682 (2d Cir.1993), *modified on other grounds,* 25 F.3d 81 (2d Cir.1994). Although there is no record of exactly when

Abbas handed his complaint over to the prison officials, the allegations in the complaint and the documents referenced therein make clear that the exchange occurred sometime after October 17, 2002.

**2.** Chief Judge Richard J. Arcara of the Western District of New York adopted Magistrate Judge H. Kenneth Schroeder, Jr.'s recommended ruling.

for failure to file the required prisoner authorization form, but was later reinstated against all defendants except Dixon and Selsky.

## II. Discussion

Because Abbas filed his complaint *pro se*, we must liberally construe his pleadings, and must interpret his complaint to raise the strongest arguments it suggests. *Weixel v. Board of Education of New York*, 287 F.3d 138, 146 (2d Cir.2002). The policy of liberally construing *pro se* submissions is driven by the understanding that "[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983).

### A. Did the District Court Err When It Dismissed Abbas's Complaint Sua Sponte?

Because Abbas proceeded *in forma pauperis*, the District Court predicated its dismissal of Abbas's complaint upon 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Those two statutes provide an efficient means by which a court can screen for and dismiss legally insufficient claims. *See Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir.2004). "Section 1915 governs proceedings *in forma pauperis*, while § 1915A applies to all civil complaints brought by prisoners against governmental officials or entities regardless of whether the prisoner has paid a filing fee." *Id.* (internal quotations omitted). "Sections 1915 and 1915A recite identical grounds for dismissal, *compare* 28 U.S.C. § 1915A(b)(1) *with* 28 U.S.C. § 1915(e)(2)(B)(i)-(ii), and we have found both sections applicable to prisoner proceedings *in forma pauperis*." *Id.* The screening provision in section 1915A(a) re-

quires courts to "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). The dismissal provision in section 1915A(b) provides that a court "shall identify cognizable claims or dismiss the complaint . . . if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1).

Although section 1915A grants courts the authority to dismiss a complaint with prejudice, nothing in sections 1915 and 1915A alters "[t]he settled rule . . . that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004) (internal quotations omitted). When reviewing a district court's decision to dismiss a prisoner complaint pursuant to section 1915A, "we accept all of the facts alleged in the complaint as true and draw all inferences in the plaintiff's favor." *Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir.2003) (*per curiam*). Such dismissals must accord the inmate an opportunity to amend the complaint "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Gomez v. USAA Federal Savings Bank*, 171 F.3d 794, 796 (2d Cir.1999) (*per curiam*).

Providing a plaintiff with notice and an opportunity to be heard is often necessary to establish the fairness and reliability of a dismissal. *Snider v. Melindez*, 199 F.3d 108, 113 (2d Cir.1999). Indeed, "courts must take care lest judicial haste in dismissing a complaint in the long run makes waste." *Phelps v. Kapnolas*, 308 F.3d 180,

185 (2d Cir.2002) (*per curiam*) (internal quotations omitted). Specifically, "[u]ntimely dismissal may prove wasteful of the court's limited resources rather than expeditious, for it often leads to a shuttling of the lawsuit between the district and appellate courts." *Lewis v. State of New York*, 547 F.2d 4, 6 (2d Cir.1976). "[U]nless it is unmistakably clear that the court lacks jurisdiction, or that the complaint lacks merit or is otherwise defective, we believe it is bad practice for a district court to dismiss without affording a plaintiff the opportunity to be heard in opposition." *Mojias v. Johnson*, 351 F.3d 606, 610–11 (2d Cir.2003) (quoting *Snider*, 199 F.3d at 113). Indeed, failure to afford an opportunity to oppose a contemplated *sua sponte* dismissal may be, "by itself, grounds for reversal." *Acosta v. Artuz*, 221 F.3d 117, 124 (2d Cir.2000) (quotations omitted).

■ In this case, the District Court dismissed Abbas's complaint *sua sponte*. In so doing, the Court looked only to the face of Abbas's complaint and found "no basis to toll the limitations period." *Abbas v. Kelly*, No. 02–cv–809Sr at 5 (W.D.N.Y. Nov. 27, 2002). The pleading requirements in the Federal Rules of Civil Procedure, however, do not compel a litigant to anticipate potential affirmative defenses, such as the statute of limitations, and to affirmatively plead facts in avoidance of such defenses. *See Jones v. Bock*, —— U.S. ——, 127 S.Ct. 910, 920, 166 L.Ed.2d 798 (2007) (holding that 28 U.S.C. § 1915A does not require prisoners affirmatively to

plead that they have exhausted their administrative remedies). Instead, Rule 8 requires a plaintiff to provide only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8.

The District Court could not tell from the face of Abbas's complaint whether he might have meritorious tolling arguments. We thus conclude that the District Court should not have dismissed Abbas's complaint on the basis of an anticipated statute-of-limitations defense without granting Abbas notice and an opportunity to be heard.

### B. *Is it Appropriate to Remand the Case for Further Proceedings?*

■ Notwithstanding the *sua sponte* dismissal of his complaint against most of the defendants, Abbas received notice and an opportunity to be heard on his tolling arguments in the district court. Abbas's claims against Dixon and Selsky survived *sua sponte* dismissal and proceeded in district court. Dixon and Selsky moved to dismiss Abbas's claims on statute of limitations grounds. Through the course of the proceedings on the motion to dismiss, Abbas had a full and fair opportunity to brief, and to offer affidavits in support of, his tolling arguments.[3] The District Court ultimately rejected Abbas's arguments on the merits. In addition, Abbas, through very capable *pro bono* counsel, had the opportunity to, and did, raise his tolling arguments on appeal.

---

**3.** In district court, Abbas had the opportunity to raise tolling arguments only against Dixon and Selsky because his claims against all other defendants were dismissed at the inception of the suit. Because his appeal against Dixon and Selsky was dismissed prior to argument, Abbas can now make tolling arguments only against the other defendants named in his complaint. The factual and legal basis for Abbas's tolling arguments, however, does not

change with the identity of the defendants under consideration. Abbas was thus given a meaningful opportunity to be heard on the merits of all his tolling arguments in district court, even though the defendants against whom he now seeks to toll the statute of limitations differ from the defendants against whom he sought to toll the statute of limitations in district court.

We have considered Abbas's tolling arguments with the benefit of a full record and we find them to be without merit. Abbas asserts that the statute of limitations should be tolled for the period of time during which he pursued his Article 78 proceeding in state court. We have held, however, that a plaintiff's pursuit of a state remedy, such as an Article 78 proceeding, does not toll the statute of limitations for filing a claim pursuant to section 1983. *See Meyer v. Frank,* 550 F.2d 726, 728–30 (2d Cir.1977); *see also Williams v. Walsh,* 558 F.2d 667, 673 (2d Cir.1977).

■ Abbas also asserts several grounds for tolling the statute of limitations under New York law. Although federal law determines when a section 1983 claim accrues, state tolling rules determine whether the limitations period has been tolled, unless state tolling rules would "defeat the goals" of section 1983. *Pearl v. City of Long Beach,* 296 F.3d 76, 80 (2d Cir.2002). Here, New York tolling rules apply.

■ Abbas contends that his claims are timely because they were filed less than three years after Dixon reversed the disposition of his disciplinary appeal. Even assuming (without deciding) that the limitations period for prisoner suits under section 1983 is tolled while a prisoner engages in mandatory exhaustion of administrative remedies, and that Abbas's allegations in his disciplinary hearing could be deemed to satisfy the Prison Litigation Reform Act's exhaustion requirement for his various claims, his argument is unavailing. The disciplinary hearing and his appeal were concluded more than three years before he filed his suit. The filing of the Article 78 petition did not toll the limitations period, and the discretionary recon-

sideration and reversal of a disciplinary decision does not restart the statute of limitations unless a new hearing is ordered and new evidence is received. *Arce v. Selsky,* 233 A.D.2d 641, 642, 650 N.Y.S.2d 48 (N.Y.App.Div.1996).

In this case, the administrative decision became final when Abbas exhausted his administrative appeals because, at that point, Abbas had no additional administrative steps available to fight the disciplinary charges. *See Essex County v. Zagata,* 91 N.Y.2d 447, 453, 672 N.Y.S.2d 281, 695 N.E.2d 232 (1998) (holding that an agency decision is final when the decision "may not be prevented or significantly ameliorated by further administrative action or by steps available to the complaining party") (internal quotations omitted). In addition, because Dixon summarily reversed the disciplinary·charges without holding a new hearing or receiving new evidence, the reversal of discipline did not start the statute of limitations clock ticking anew. *See Arce,* 233 A.D.2d at 642, 650 N.Y.S.2d 48. Moreover, Abbas has not claimed that Dixon's reversal of the disciplinary decision caused him any harm, nor could he. If anything, Abbas benefitted from Dixon's decision. Thus, the reversal neither constituted actionable conduct by Dixon, nor reinstituted the harmful effects of earlier actionable conduct by any of the defendants.

■ Finally, Abbas argues that the statute of limitations should be equitably tolled for several reasons: (1) because he diligently, but unsuccessfully, requested outside assistance from several sources; (2) because prison officials placed him in keeplock for a substantial period of time;[4] (3) because he was confused about whether the Supreme Court's decision in *Heck v.*

---

**4.** The parties dispute the precise amount of time Abbas spent in keeplock during the statu-

tory period.

*Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), required him to obtain a "favorable termination" of his prison disciplinary proceedings prior to challenging the proceedings in a section 1983 action;[5] and (4) because the prison officials brought false disciplinary charges against him to prevent him from filing his federal claim.

▆▆▆ Under New York law, the doctrines of equitable tolling or equitable estoppel "may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action." *Doe v. Holy See (State of Vatican City)*, 17 A.D.3d 793, 794, 793 N.Y.S.2d 565 (N.Y.App.Div.2005) (internal quotations omitted); *Kotlyarsky v. New York Post*, 195 Misc.2d 150, 757 N.Y.S.2d 703, 706 (N.Y.Sup.Ct.2003). "Due diligence on the part of the plaintiff in bringing [an] action," however, is an essential element of equitable relief. *Holy See*, 17 A.D.3d at 796, 793 N.Y.S.2d 565. The plaintiff bears the burden of showing that the action was brought within a reasonable period of time after the facts giving rise to the equitable tolling or equitable estoppel claim "have ceased to be operational." *Id.* If a plaintiff cannot "articulate[ ] any acts by defendants that prevented [him] from timely commencing suit" then he has "failed to meet [his] burden of showing that [he was] wrongfully induced by defendants not to commence suit." *Id.* As such, even if we were to agree with Abbas that he was the victim of "fraud, misrepresentations or deception," Abbas has failed to show that any of those circumstances prevented him from timely filing his complaint. Abbas's tolling arguments are thus without merit.

### III. Conclusion

Although the District Court erred when it dismissed Abbas's claims *sua sponte*, it would be futile to vacate the District Court's order and remand the case for further proceedings because Abbas had notice and a meaningful opportunity to be heard on his tolling arguments in the district court and on appeal, and because his tolling arguments are without merit. The decision of the District Court is therefore AFFIRMED.

---

**5.** Abbas has acknowledged that this Court clarified any confusion about the *Heck* rule in *Jenkins v. Haubert*, 179 F.3d 19 (2d Cir.1999). Moreover, the *Jenkins* decision issued on June 11, 1999, almost three years before the statute of limitations for Abbas's earliest section 1983 claim expired.