**The CIT GROUP/COMMERCIAL SERVICES, INC., Plaintiff,**

v.

**Anthony PRISCO, Defendant.**

**No. 08 Civ. 7058(CM).**

United States District Court, S.D. New York.

July 30, 2009.

Lloyd Mitchell Green, Stanley Lawrence Lane, Jr., Otterbourg, Steindler, Houston & Rosen, New York, NY, for Plaintiff.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

McMAHON, District Judge.

### *FACTS*

The following facts are undisputed based on the Complaint, Answer, and Plaintiff's and Defendant's Rule 56.1 statements.

*Parties*

The Plaintiff, CIT, is a corporation organized under the laws of New York. It is engaged in factoring and commercial financing. (Pl.'s 56.1 St. ¶¶ 1–2).

The Defendant, Anthony Prisco, was, and still is, an officer or director of GI Apparel, Inc. (Pl.'s 56.1 St. ¶ 3).

*The Financing Agreements*

On February 28, 2007, CIT and GI Apparel entered into an Amended and Restated Factoring Agreement. (Pl.'s 56.1 St. ¶ 8; Compl. Ex. B). CIT agreed to continue to act as GI Apparel's commercial factor by purchasing its accounts receivable. *Id.*

On the same day, CIT and GI Apparel signed an Inventory Security Agreement. (Pl.'s 56.1 St. ¶ 9). CIT agreed to make discretionary loans and advances to GI Apparel in exchange for a security interest in GI Apparel's "present and hereafter acquired merchandise, inventory and goods, and all additions, substitutions and replacements thereof, wherever located, together with all goods and materials used or usable in manufacturing, processing, packing or shipping same, in all stages of production—from raw materials to work-in-progress to finished goods—and all proceeds of whatever sort." (Pl.'s 56.1 St. ¶ 9); (Compl. Ex. C).

The Factoring Agreement and Inventory Security Agreement are collectively referred to as the "Financing Agreements." (Pl.'s 56.1 St. ¶ 9).

On February 28, 2007, as an inducement to CIT to enter into the Financing Agreements, Defendant Anthony Prisco entered into a Guaranty Agreement. In the Guaranty, Prisco, among other things, agreed to pay to CIT, on demand, the amount of all expenses (including CIT's reasonable attorney's fees) incurred by CIT in collecting or attempting to collect GI Apparel's obligations to CIT. (Pl.'s 56.1 St. ¶¶ 9, 11(A)). Prisco also agreed that CIT would not be liable for any failure on its part to collect any of GI Apparel's obligations or to realize upon any collateral or security thereof, or for any delay in so doing; nor would CIT be under any obligation to take any action whatsoever with regard thereto. (Pl.'s 56.1 St. ¶ 11(C)). Prisco's Guaranty was absolute, unconditional and continuing, regardless of the validity, regularity or enforceability of any of GI Apparel's obligations to CIT. (Pl.'s 56.1 St. ¶ 11(D)). Prisco agreed that, in any action based on his Guaranty brought by CIT, he would not deduct, set off, or seek to counterclaim for, or recoup, any amounts that were or might be owed by him to CIT. (Pl.'s 56.1 St. ¶ 11(E)).

Prisco consented to *in personam* jurisdiction of the federal and state courts of New York and agreed that service of process could be made upon him by mail. (Pl.'s 56.1 St. ¶ 11(F)). The Guaranty is governed by and construed in accordance with the laws of New York State. (Pl.'s 56.1 St. ¶ 11(J)).

The Guaranty states that CIT's books and records, showing the accounts between CIT and GI Apparel, are admissible in evidence in any action or proceeding and constitute prima facie proof of the items therein set forth; and that CIT's monthly statements rendered to GI Apparel are binding upon Prisco, whether or not he actually received copies of them, and constitute an account stated between CIT and GI Apparel, unless CIT received a written statement of GI Apparel's exceptions thereto within thirty days after any such statement was mailed to GI Apparel. (Pl.'s 56.1 St. ¶ 11(G)); (Compl. Ex. A 3).

After signing the Financing Agreements and the Guaranty, CIT acted as the commercial factor for, and extended credit and

granted financial accommodations to, GI Apparel, including purchasing GI Apparel's accounts receivable, providing credit approval for GI Apparel's orders, assuming credit risks on approved orders, and by making advances to GI Apparel. (Pl.'s 56.1 St. ¶ 12). CIT rendered monthly statements to GI Apparel that reflected the accounts purchased, advances made, fees and charges, and all other financial transactions between CIT and GI apparel during the preceding month. *Id.*

After February 28, 2007, CIT made loans to GI Apparel pursuant to the Inventory Loan Agreement, the repayment of which was secured by the collateral that GI Apparel granted CIT a security interest under the terms of the agreement. (Pl.'s 56.1 St. ¶ 13). CIT issued monthly statements to GI Apparel that distinguished between obligations owed by GI Apparel to CIT under the sale of accounts receivable under the Factoring Agreement and the loans made under the Inventory Loan Agreement. (Pl.'s 56.1 St. ¶ 33). The monthly statements contain three columns: Accounts Receivable Balance, Client Position Account, and Funds In Use. (Pl.'s 56.1 St. ¶ 38). The Accounts Receivable Balance column represents the amount owed by GI Apparel on account of advances made by CIT for purchased accounts receivable that remain uncollected. (Pl.'s 56.1 St. ¶ 38). The Client Position Account column represents the amount of all other financial accommodations including, primarily, the outstanding balance of GI Apparel's inventory loans. *Id.* The Funds In Use column represents the sum of the Accounts Receivable Balance and other accommodations. *Id.*

During the course of their commercial relationship, CIT provided GI Apparel with electronic ways of accessing information pertaining to its accounts with CIT. (Pl.'s 56.1 St. ¶ 29). The Defendant does not contest that CIT made the account information available to GI Apparel. (Decl. of Anthony Prisco ¶ 8). According to Prisco, the identifications and passwords needed to access the statements were assigned to employees of GI Apparel, not to him, and GI Apparel no longer employs the individuals who got the identifications and passwords. *Id.* That, of course, is a problem entirely of GI Apparel's making.

*The Four–Party Agreement*

In February 2008, CIT entered into a four-party agreement with GI Apparel, DMG Import LLC ("DMGI") and Commodore Factors Corp. ("Commodore"). (Decl. of Bradley J. Stanza ¶ 23). Commodore was DMGI's commercial factor and was collecting DMGI's accounts receivable. (Decl. of Bradley J. Stanza ¶ 24). Under the agreement, GI Apparel relied on DMGI to manufacture garments in response to purchase orders received from specifically designated customers. *Id.* DMGI would fulfill the orders and issue an invoice for the manufacture of the goods to GI Apparel; GI Apparel would issue a separate sales invoice to the customer. *Id.*

After the customer paid the invoice, and CIT collected payment, CIT would automatically remit to Commodore the amount equal to the underlying invoice for the manufacture of the goods issued by DMGI to GI Apparel. (Decl. of Bradley J. Stanza ¶ 24). The remaining balance, which was equal to the difference between the invoice for the manufacture of the goods and the sales invoice, was credited to GI Apparel's factoring account. *Id.* CIT kept separate records of the payments received from the seven customers covered under the four-party agreement. (Decl. of Bradley J. Stanza ¶ 25). The monthly statement issued by CIT for GI Apparel's main account (427T) did not account for the trans-

actions covered under the four-party agreement. *Id.*

*GI Apparel Defaults*

As of March 25, 2008, GI Apparel was in default of its obligations to CIT under the Financing Agreements. (Pl.'s 56.1 St. ¶ 14). On March 25, 2008, CIT delivered written notice to GI Apparel of its default under the Financing Agreements and demanded that GI Apparel pay CIT. (Pl.'s 56.1 St. ¶ 15). The written notice indicated that GI Apparel owed CIT not less than $6,263,000.00. (Compl. Ex. D 1).

After March 25, 2008, CIT applied certain collections to GI Apparel's account. (Pl.'s 56.1 St. ¶ 16).

On April 11, 2008, CIT and Prisco, acting on behalf of GI Apparel, signed a peaceful possession letter. *Id.* The peaceful possession letter states, "the Debtor is indebted to CIT pursuant to the Financing Agreements in an amount of not less than $6,200,000, plus interest accrued and accruing thereon, plus the commissions, costs, expense, attorneys' fees and other charges or contractual obligations." (Pl.'s 56.1 St. ¶ 16); (Compl. Ex. E). The letter further states that the obligations are, "unconditionally owed by the Debtor to CIT without offset, defense or counterclaim of any kind, nature or description whatsoever." (Pl.'s 56.1 St. ¶ 16); (Compl. Ex. E). Prisco does not dispute that he signed the peaceful possession letter. (Df.'s 561. St. ¶¶ 16, 17).

In the peaceful possession letter, GI Apparel agreed that it was in default under the Financing Agreements thereby entitling CIT to exercise immediately its rights and remedies under the Financing Agreements. (Pl.'s 56.1 St. ¶ 18). GI Apparel also acknowledged that it did not have sufficient working capital to continue its business, and was without the means to protect the collateral that CIT had a security interest in pursuant to the Financing Agreements. *Id.* GI Apparel agreed to surrender, deliver, and grant to CIT peaceful possession of the CIT collateral, and all products and proceeds thereof. (Pl.'s 56.1 St. ¶ 19).

As CIT was preparing to auction the collateral surrendered by GI Apparel, CIT became aware of certain restrictions on the general use of GI Apparel's intellectual property. (Pl.'s 56.1 St. ¶ 20). On or about May 9, 2008, CIT received $100,000 as consideration for its agreement to release its lien against GI Apparel's intellectual property and to permit GI Apparel's intellectual property to be transferred to Prisco. *Id.*

On or about May 28, 2009, CIT conducted a public auction sale of certain of GI Apparel's inventory and equipment. (Pl.'s 56.1 St. ¶ 25). From auction proceeds, CIT credited GI Apparel's account $287,250.50 on June 10, 2008 and $85,322.19 on June 26, 2008. *Id.* Prisco does not dispute that the account was credited, but claims that Plaintiff has failed to account for the entire proceeds from the auction. (Df.'s 561. St. ¶ 25).

CIT has applied towards the amount of outstanding debt cash collateral pledges made by Prisco Properties, LLC and by Anthony Prisco in the amounts of $156,513.77 and $312,990.71. (Pl.'s 56.1 St. ¶ 26).

On June 24, 2008, CIT made written demand upon Prisco for payment under Prisco's Guaranty of all outstanding obligations to CIT from GI Apparel in the principal amount of not less than $5,084,124.34, together with all fees, interest, costs and expenses. (Pl.'s 56.1 St. ¶ 28).

Neither the Defendant nor GI apparel objected to any CIT statement prior to December 29, 2008. (Pl.'s 56.1 St. ¶ 31).

Not until December 29, 2008—29 days after the issuance of the November 30, 2008 monthly statement—did Prisco email CIT and object to the November 30, 2008 statement and "the prior monthly statements". (Prisco Decl. ¶ 9); (Prisco Decl. Ex. B).

*The Instant Action*

The Plaintiff filed its complaint on August 7, 2008, seeking recovery of $5,08,-124.34 plus interest and attorneys fees of no less than $500,000. (Compl. ¶ 22).

The Defendant answered the complaint on September 8, 2008, denying liability and disputing the amount of damages, asserting various affirmative defenses, and seeking dismissal without prejudice to a refiling in New Jersey. (Answer ¶ 22).

On October 24, 2008 this Court entered a case management plan that stayed discovery with respect to Defendant's Affirmative Defenses pending the resolution of Plaintiff's motion pursuant to Federal Rule of Civil Procedure 12(c) or Rule 56. (Case Management Plan ¶ 5). The stay did not limit the rights of either party to conduct discovery concerning the execution and delivery of the various agreements, notices, and demands. (Case Management Plan ¶ 6).

## STANDARD OF REVIEW

A party is entitled to summary judgment when there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In addressing a motion for summary judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [its] favor." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Whether any disputed issue of fact exists is for the Court to determine. *Balderman v. United States Veterans Admin.*, 870 F.2d 57, 60 (2d Cir.1989).

The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must present "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998). Moreover, not every disputed factual issue is material in light of the substantive law that governs the case. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Finally, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Industries Co.*, 475 U.S. at 586, 106 S.Ct. 1348. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant.

When "a creditor seeks summary judgment upon a written guaranty, the creditor need prove no more than an absolute and unconditional guaranty, the underlying debt, and the guarantor's failure to perform under the guarantee." *U.S. Sec. & Futures Corp. v. Irvine*, No. Civ. 00–cv–2322, 2003 WL 1907877 at *4 (S.D.N.Y. Apr. 15, 2003).

Generally, *pro se* pleadings must be construed liberally and interpreted to make the strongest arguments they suggest. *Abbas v. Dixon*, 480 F.3d 636, 639

(2d Cir.2007). In liberally construing the *pro se* pleadings the Court should make "reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training". *Id.* at 639 (quoting *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983)). Relaxed standards of pleading are not automatically available to *pro se* litigants; for example, lawyers appearing *pro se* are held to traditional standards of pleading. *Harbulak v. Suffolk County,* 654 F.2d 194, 198 (2d. Cir.1981).

In this case, the Defendant, while technically *pro se,* was assisted in preparing his answer to the complaint and opposition to summary judgment by one Jeffrey L. Miller, the former counsel of GI Apparel. (Answer 8); (Pl.'s Mem. In Opp. 3). Allowing the Defendant to have the benefit of the liberal pleadings standard of *pro se* parties when he had the assistance of counsel, would be fundamentally unfair. *See, Raghavendra v. Trustees of Columbia University,* No. 06 Civ 6841, 2008 WL 2696226 at *n. 5 (S.D.N.Y. July 7, 2008) (citing *Johnson v. Board of County Com'rs for County of Fremont,* 868 F.Supp. 1226, 1231 (D.Colo.1994) ("The entire process would be skewed to the distinct disadvantage of the nonoffending party.")). However, while the Defendant's motion papers need not be given the liberal reading normally afforded to a *pro se* parties, the result would not change if the court did give the papers such a reading, so I have given Defendant the benefit of *pro se* status.

### PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT

#### A) An Absolute and Unconditional Guaranty Exists and the Defendant Admits to Liability Thereunder

There is no dispute that Prisco made an absolute and unconditional guaranty and that he has failed to perform under the guaranty. In fact, in his opposition to the motion for summary judgment, the Defendant "does not dispute liability on his guarantee [sic], rather he disputes the amount." (Df.'s Mem. In Opp. 1).

#### B) Amount of Underlying Debt is Established by the Monthly Statements

██ The Defendant insists that there is a disputed issue of fact concerning how much he owes CIT. (Df.'s Mem. In Opp. 1). Defendant is incorrect.

Under the terms of the Guaranty, the monthly statements rendered to GI Apparel constitute prima facie evidence of the underlying debt. The Guaranty states:

[CIT's] books and records showing the account between [CIT] and [GI Apparel] shall be admissible in evidence in any action or proceeding as prima facie proof of the items therein set forth.

(Compl. Ex. B at 3). The statements also create an account stated and are conclusive as to the amount owed unless challenged in the thirty days after they were sent to GI Apparel,

[CIT's] monthly statements rendered to [GI Apparel] shall be binding upon the undersigned (whether or not the undersigned received copies thereof) and, shall constitute an account stated between [CIT] and [GI Apparel], unless [CIT] shall receive a written statement of [GI Apparel's] exceptions within thirty (30) days after the statement was mailed to [GI Apparel].

(Compl. Ex. B at 3). The monthly statements contain similar language on the bottom of every page,

THIS STATEMENT SHALL BE DEEMED CORRECT AND BINDING UPON YOU AND SHALL CONSTI-

TUTE AN ACCOUNT STATED BE-TWEEN US, UNLESS WE RECEIVE A WRITTEN STATEMENT OF YOUR EXCEPTIONS WITHIN THIRTY DAYS AFTER SAME IS MADE AVAILABLE TO YOU.

(Decl. of Bradley Stanza Ex. 10).[1]

Prisco did not object to any statement issued prior to November 30, 2008. (Prisco Decl. ¶ 9); (Prisco Decl. Ex. B). Therefore, all such statements are both prima facie and conclusive evidence of the amounts owed prior to November 1, 2008.

In his December 28, 2008 email, Prisco objected both to the November 30, 2008 statement and "object[ed] to the prior monthly statements in Brad's certification." (Decl. of Anthony Prisco Ex. B). However, this challenge comes too late. The plain meaning of the contract terms controls, see, e.g., Greenfield v. Philles Records, Inc., 98 N.Y.2d 562, 569, 750 N.Y.S.2d 565, 780 N.E.2d 166, 170 (N.Y. 2002), and the plain meaning of the contract here is that the amount owed becomes conclusive if thirty days pass with no objection from the debtor. (Compl. Ex. B at 3). Furthermore, to the extent that Prisco is trying to assert that statements prior to April 11, 2008 are incorrect, he runs afoul of the peaceful possession letter that he signed, in which he admitted that GI Apparel was, "indebted to CIT pursuant to the Financing Agreements in an amount of not less than $6,200,000." (Pl.'s 56.1 St. ¶ 16); (Compl. Ex. E).

Prisco's contention that the monthly statements do not contain enough detail to enable him to verify or dispute the amounts owed does nothing to aid his cause. If he needed more detail, he had to ask for it within 30 days of the issuance of the statement; otherwise, the amount stated thereon became binding on him.

Prisco did timely object to the November 30, 2008 monthly statement. (Prisco Decl. Ex. B). Therefore, the statement is not conclusive evidence of the amounts added to the bottom line during the month of November 2008[2]. It is, however, prima facie evidence of the newly-charged amounts, which means that Prisco is required to offer admissible evidence to counter the correctness of that statement.

Prisco offers no such evidence. He points to four transactions, all of them occurring prior to August 2008 (and so reflected on statements that are conclusive as to the amount of Prisco's debt to CIT), which he thinks "might" be incorrect. (Decl. of Anthony Prisco ¶¶ 6, 7, 10, 11). Because those amounts are already conclusively proved, Defendant has failed to raise any genuine issue of fact.

Prisco has raised no issue as to the new charges listed on the November 30, 2008 statement. Interest charges are the only transactions reflected in the main GI Apparel account (427T), the Meijer account (485P), the Fred Stores account (488E), and the K–Mart (Sears) account (490D) for November 2008. Two accounts, Wal–Mart (476Y) and Dollar General (488C), had no balance and show no activity in November 2008. There were three transactions in the J.C. Penny account: an interest payment, a debit for $32.92, and a credit for $32.92. The two transactions for $32.92 cancel out and have no effect on the month end balance. Finally, the Shopko account

---

1. The Plaintiff alleges that "mailed" means "rendered" under the parties' course of dealing, (Pl.'s 56.1 St. ¶ 11(G)), and Defendant does not contest that fact, which means it is accepted as the correct reading of "mailed" for purposes of this action.

2. All amounts carried over from prior statements are conclusively proved by the lack of a timely objection to those statements.

(488D) shows the application of $2.09 in interest and a debit of $18,740.49. The $18,740.49 Shopko debit materially increases the defendant's liability to CIT; however, Prisco offers no evidence that calls the validity of this (or any other) transaction into question. Nor has he suggested that other transactions are missing from the November 30, 2008 statement.

Therefore, Prisco has not met his obligation to counter the November 30, 2008, statement's prima facie evidence of the amount of the underlying debt with actual proof of error on plaintiff's part.

Similarly, the fact that Prisco never saw the monthly statements (if true) is irrelevant to his liability to CIT in his capacity as Guarantor. The Guaranty plainly states that the monthly statements are binding on Prisco "whether or not the undersigned [Prisco] received copies thereof." (Compl. Ex. B at 3).

The fact that Prisco claims never to have personally accessed the monthly accounts does not mean that they were not properly rendered to GI Apparel. CIT's uncontested records indicate that GI Apparel was given online access to its monthly statements and that the statements were frequently and regularly accessed. (Reply Decl. of Bradley Stanza Ex. A). Prisco claims the online access information was provided to employees of GI Apparel who are no longer employed by the company, and that he personally never accessed the information. (Decl. of Anthony Prisco ¶ 8). That only means that Prisco managed his business poorly.

Having failed to raise a genuine issue of fact, Defendant Prisco is liable to the Plaintiff in the amount stated in the last statement—the November 30, 2008 statement plus interest.

### C) No Further Discovery Relating to the Amount of Underlying Debt Is Necessary

 The Defendant asks for additional discovery relating to the transactions reported in the monthly statements. (Decl. of Anthony Prisco ¶ 4). He is not entitled to any.

 The Second Circuit has consistently held that a party opposing a motion for summary judgment who claims to be unable to produce evidence in opposition to the motion must file an affidavit explaining: (1) what discovery he needs; (2) how those facts are reasonably expected to create a genuine issue of material fact; (3) what efforts the affiant has made to obtain those facts; and (4) why those efforts were unsuccessful. *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 923 (2d. Cir.1985). If the information the opponent seeks to discover would not create an issue of material fact, even assuming its truth, then the opponent has not satisfied the second prong of Burlington, and discovery on the matter is properly denied. *Hudson River Sloop Clearwater, Inc. v. Dept. of Navy*, 891 F.2d 414, 422 (2d. Cir.1989). Additionally, "The nonmoving party must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment." *Trebor Sportswear Co., Inc. v. The Limited Stores, Inc.*, 865 F.2d 506 (2d Cir.1989) (internal citations omitted). A request for discovery based on "speculation as to what potentially could be discovered" should be denied. *National Union Fire Ins. Co. of Pittsburgh, PA. v. Stroh Companies, Inc.*, 265 F.3d 97, 117 (2d Cir.2001).

Prisco has failed to establish that he was denied the opportunity to discover information that would raise a genuine issue of fact. The statements became conclusive thirty days after they were sent. Finding

out now that they contained errors would not, under the express terms of the Guaranty, alter their conclusiveness as to the amount owed. Prisco's request for discovery, at best, is "based on speculation as to what potentially could be discovered," and is therefore denied. *National Union Fire Ins., supra.*, 265 F.3d at 117.

### D) Affirmative Defenses

The Defendant asserts a number of "affirmative defenses" in his Answer. He alleges that Plaintiff failed to mitigate damages (¶ 22(a)); mismanaged the GI Apparel assets that it seized (¶ 22(b)); the Plaintiff failed to credit properly GI Apparel's account when customers were unable to make payment to GI Apparel (¶ 22(c)); prevented the Defendant, as the shareholder of Prisco Properties LLC, from renting the building that formerly housed GI Apparel's business (¶ 22(d)(1)); induced the Defendant, as the shareholder of Prisco Properties, to mortgage the building that formerly housed GI Apparel's business without consent of TD Bankworth, the original mortgage holder, exposing the Defendant to claims of fraud (¶ 22(d)(2)); and failed to fund the Defendant's payroll, which exposed the Defendant to substantial penalties from the New Jersey Department of Labor (¶ 22(d)(3)).

 The Defendant has waived his right to assert any affirmative defenses to defend liability under the Guaranty, because the language of the Guaranty is unconditional and absolute. *Bank of New York v. Tri Polyta Finance B.V.*, 2003 WL 1960587 at *5, No. 01Civ.9104, (S.D.N.Y. April 25, 2003). Under New York law, the only affirmative defenses that are not waived by an absolute and unconditional Guaranty are payment and lack of consideration for the Guaranty. *Walcutt v. Clevite Corp.*, 13 N.Y.2d 48, 56, 241 N.Y.S.2d

834, 191 N.E.2d 894 (1963). Prisco does not allege either defense.

Except for paragraphs 22(a), which asserts that CIT mismanaged collateral, and 22(b), which asserts that CIT did not properly credit GI Apparel accounts, the "affirmative defenses" are in fact counterclaims. Federal Rule of Civil Procedure 8(c)(2) obligates the court to treat a claim as if it were properly designated. Fed.R.Civ.P. 8(c)(2). I will, therefore, treat the "affirmative defenses" pleaded in paragraphs 22(c) through 22(d)(3) as counterclaims.

In his Memorandum in Opposition to the Plaintiff's Motion for Summary Judgment, the Defendant indicates that he "wishes all defenses not directed to the amount of the debt that he has guaranteed to be dismissed without prejudice to assert them elsewhere". (Df.'s Mem. In Opp. 2).

 Defendant's counterclaims (asserted as affirmative defenses) do not appear to be compulsory counterclaims under Federal Rule of Civil Procedure 13(a), since they do not on their face arise under the Financing Agreements. They relate to various other aspects of the parties' commercial relationship. They are, therefore, permissive counterclaims, which can be asserted in a separate action.

Therefore, the affirmative defenses set forth at paragraphs 22(a) and 22(b) are dismissed with prejudice. The counterclaims, pleaded as "affirmative defenses" at paragraphs 22(c) and 22(d)(1–3), are dismissed without prejudice.

### E) Interest and Attorney's Fees

The Plaintiff is also entitled to recover interest on the amount due under the Guaranty and legal fees incurred in enforcing its rights under Prisco's Guaranty. (Pl.'s 56.1 St. ¶ 11(A)). I am referring the issue of attorney's fees and interest to the

Hon. United States Magistrate Frank Maas for inquest.

## *CONCLUSION*

Plaintiff's motion for summary judgment is granted. Defendant's request for dismissal of his permissive counterclaims (erroneously plead as "affirmative defenses" at paragraphs 22(c) and (d)(1–3)) is also granted and those claims are dismissed without prejudice.